John MONTGOMERY, Petitioner–
Appellee,

v.

Angela WELLS, Respondent–Appellant.

No. 04–1853.

Court of Appeals of Iowa.

Nov. 9, 2005.

Jeffrey A. Smith, Oskaloosa, for appellant.

Gregory G. Milani of Orsborn, Bauerle, Milani & Grothe, L.L.P., Ottumwa, for appellee.

Considered by HUITINK, P.J., and VOGEL and ZIMMER, JJ.

VOGEL, J.

Angela Wells appeals the order of the district court, establishing the name of her minor child as Bradyn Briar John Montgomery. We affirm.

**Background facts and proceedings.**

Angela Wells and John Montgomery were involved in a romantic relationship for approximately one and a half years, resulting in the birth of their son Bradyn in June 2003. The couple was never married, nor did they live together at the time of Bradyn's birth. Although John is not shown on the birth certificate, a paternity test indicated he was Bradyn's father. In September 2003, John filed a petition to establish paternity, custody, support and visitation. Prior to trial, all issues had been resolved except for two: (1) the specifics of summer visitation and (2) whether Bradyn's surname should be changed from "Wells" to "Montgomery." Trial on these matters was held in August 2004, with the court setting visitation and ordering Bradyn's name established as Bradyn Briar John Montgomery. Angela appeals the court's order on the surname issue, contending that (1) the court did not have authority to determine Bradyn's surname, and (2) the court's changing of Bradyn's surname from Wells to Montgomery is not in his best interests.

**I. Scope of Review.**

Our scope of review in an equitable action, including a surname dispute, is de novo. Iowa R.App. P. 6.4; *In re Marriage of Gulsvig*, 498 N.W.2d 725, 727–28 (Iowa 1993); *In re Staros*, 280 N.W.2d 409, 410

(Iowa 1979). In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court but is not bound by them. Iowa R.App. P. 6.14(6)(*g* ).

## II. Challenging of Minor Child's Surname

### A. Initial Name Determination versus Name Change.

■ We first must clarify the issue being raised on appeal. Angela asserts that the district court did not have the authority to *change* Bradyn's surname in this case. Our appellate courts have addressed the question of surname changes in prior cases. *See generally, Matter of Quirk,* 504 N.W.2d 879, 882–83 (Iowa 1993); *Gulsvig,* 498 N.W.2d at 726; *Staros,* 280 N.W.2d at 410–11; *Gail v. Winemiller,* 464 N.W.2d 697, 698 (Iowa Ct. App.1990). We note, however, that this challenge to the naming of a child is not a request for a name *change* but rather is a challenge to the *initial* determination of a surname. When a parent unilaterally chooses a child's name, the other parent may request the court to examine the name issue—as "the mother does not have the absolute right to name the child because of custody due to birth. Consequently, [she] should gain no advantage from her unilateral act in naming [the child]." *Gulsvig,* 498 N.W.2d at 729 (citations omitted). Therefore, when the court first entertains an action between the parents to determine their legal rights and relationships with each other and the child, the court may also consider the legitimacy

of the child's original naming as part of its determination of the child's legal status and custody. *See Gulsvig,* 498 N.W.2d at 733 (Snell, J. dissenting); *Quirk,* 504 N.W.2d at 882–83 (Carter, J. concurring specially); *Id.* at 884 (Snell, J. dissenting) ("This case, like *Gulsvig,* is not a change of name case; it is a name case *ab initio.* The child was not legally named on the birth certificate.") In this case, Bradyn's surname was given to him, following Angela's unilateral supplying of a name on the birth certificate. It is therefore not an action to *change* Bradyn's surname but a challenge to the initial determination of the name Angela chose to record on the birth certificate. It is on this foundation, within the framework of the authority discussed below, that we address the issues on appeal.

### B. The District Court's Authority[1] over a Surname Dispute.

■ John brought this action under Iowa Code chapter 600B (2003) seeking to establish paternity, custody, support and visitation. At some point, Bradyn's surname became enmeshed with the issues presented to the court for resolution, without a written pleading or assertion of any legal authority. Nonetheless, the issue was raised, and decided by the district court, preserving it for our review. *Meier v. Senecaut,* 641 N.W.2d 532, 537–38 (Iowa 2002).

■ Angela asserts that the district court, in ruling on the petition brought under Iowa Code chapter 600B, may not draw its legal authority from Iowa Code section 598.41. Moreover, Angela argues that nowhere in section 598.41 does the

---

1. Where subject matter jurisdiction exists, it does not necessarily follow that a court has authority to act in a specific case included within that general class. *Holding v. Franklin County Zoning Bd. of Adjustment,* 565 N.W.2d 318, 319 (Iowa 1997). While the authority of the district court may be subject to waiver, consent or estoppel, *State v. Mandicino,* 509 N.W.2d 481, 483 (Iowa 1993), John does not raise this issue and we proceed to the merits of Angela's authority claim.

legislature give authority to change the name of a child. Issues of the jurisdiction, authority, and venue of the district court are legal issues reviewed on error. *In re Marriage of Engler,* 532 N.W.2d 747, 748 (Iowa 1995).

Contrary to Angela's assertions, the Iowa Code provides an avenue upon which a child's surname may be changed as a determination of surname incidental to custody decisions under Iowa Code chapter 598. *Gulsvig,* 498 N.W.2d at 727–29 (sanctioning the district court's authority to adjudicate a name-change issue in dissolution proceedings under chapter 598 as being incident to the child's legal status). Because the case before us involves unmarried parties, brought on a petition for paternity, custody, visitation and support under Iowa Code chapter 600B, we must determine whether the court's equitable powers inferred under chapter 598 can be applied to an action under chapter 600B.

Iowa Code chapter 600B confers subject matter jurisdiction upon the district court to decide cases of paternity, custody, visitation and support between unmarried parties. *See generally* Iowa Code §§ 600B.1, et seq. (2003). Specifically, section 600B.40 grants the district court authority to determine matters of custody and visitation as it would under Iowa Code section 598.41:

> In determining the visitation or custody arrangements of a child born out of wedlock, if a judgment of paternity is entered and the mother of the child has not been awarded sole custody, section 598.41 shall apply to the determination, as applicable, and the court shall consider the factors specified in section 598.41, subsection 3, including but not limited to the factor related to a parent's history of domestic abuse.

Iowa Code § 600B.40 (2003).

Our Supreme Court has held that determinations of custody under section 598.41 encompass initial determinations of a child's surname, as one's surname is indicative of one's legal status:

> When we examine our custody statute, Iowa Code section 598.41, we believe that authority to change a child's name may be inferred. Section 598.41 provides the court with broad discretion in determining custody and the physical care of a child and expresses a preference for joint custody. Each custodian has equal participation in decisions affecting "the child's legal status." Iowa Code § 598.41(2). We believe an infant child's name is an incident of the child's "legal status." Accordingly, we hold the trial court possessed subject matter jurisdiction in this respect.

*Gulsvig,* 498 N.W.2d at 728. Although *Gulsvig* is distinguishable because it was a dissolution action between married parties, the Iowa General Assembly has granted the district court equal authority in an action between unmarried parties by enacting section 600B.40. "The criteria governing custody decisions are the same regardless of whether the parties are dissolving their marriage or are unwed." *In re Purscell,* 544 N.W.2d 466, 468 (Iowa Ct.App.1995). *See also Lambert v. Everist,* 418 N.W.2d 40, 42 (Iowa 1988).

We therefore hold that the district court does have authority under Iowa Code section 600B.40, as it does in section 598.41, to consider and enter a ruling on a child's legal status, including the determination of a child's surname.

## IV. Best Interests of the Child.

Angela next contends that it is not in Bradyn's best interests to have his surname changed from Wells to Montgomery. We begin by observing that neither

parent has a superior right in determining the child's last name. *Gulsvig,* 498 N.W.2d at 729. Moreover, our Supreme Court has specifically rejected the historical tradition of using a father's surname for a child in *Gulsvig,* 498 N.W.2d at 729:

> We agree with the holdings of other jurisdictions that the presumption that a child bears the surname of his father is outdated and therefore rejected. This conclusion is similar to our repudiation of the inference that the best interests of young children are served by placing the children in their mother's custody. We observed that the "real issue is not the sex of the parent." The trial court correctly determined that the real issue is the best interest of the child.

(citations omitted).

▮ Ultimately, our focus is the best interests of the child in custody and legal status proceedings under section 598.41 to determine a child's last name. *Gulsvig,* 498 N.W.2d at 729; *see also* Iowa Code § 600B.40. There is no fixed list of factors to consider when gauging the best interest of the child in an initial name dispute. However, several jurisdictions in addition to Iowa have formulated a non-exhaustive list of considerations, including the following:

(1) Convenience for the child to have the same name as or a different name from the custodial parent. *In re Marriage of Schiffman,* 28 Cal.3d 640, 169 Cal.Rptr. 918, 922–23, 620 P.2d 579 (1980); *Gulsvig,* 498 N.W.2d at 728–30; *Gubernat v. Deremer,* 140 N.J. 120, 657 A.2d 856, 868 (1995); *Block v. Bartelt,* 580 N.W.2d 152, 154 (S.D.1998); *Keegan v. Gudahl,* 525 N.W.2d 695, 699 (S.D.1994); *In re Guthrie,* 45 S.W.3d 719, 725–726 (Tex. App.2001).

(2) Identification of the child as part of a family unit. *Schiffman,* 169 Cal.Rptr. at 922–23, 620 P.2d 579; *Gulsvig,* 498 N.W.2d at 728–30; *Gubernat,* 657 A.2d at 868; *Keegan,* 525 N.W.2d at 699; *Guthrie,* 45 S.W.3d at 725–726; *In re C.B.M.,* 14 S.W.3d 855, 862 (Tex.App. 2000).

(3) Assurances by the mother that she would not change her name if she married or remarried if the child maintains the mother's surname. *Gulsvig,* 498 N.W.2d at 728–30; *State ex rel. Spence-Chapin Servs. to Families & Children v. Tedeno,* 101 Misc.2d 485, 421 N.Y.S.2d 297, 300 (N.Y.Sup.Ct.1979); *Guthrie,* 45 S.W.3d at 725–726.

(4) Avoiding embarrassment, inconvenience, or confusion for the custodial parent or the child. *Gubernat,* 657 A.2d at 868; *Guthrie,* 45 S.W.3d at 725–726.

(5) The length of time the surname has been used. *Schiffman,* 169 Cal.Rptr. at 922–23, 620 P.2d 579; *Gubernat,* 657 A.2d at 868; *Block,* 580 N.W.2d at 154; *Keegan,* 525 N.W.2d at 699–700; *Guthrie,* 45 S.W.3d at 725–726.

(6) Parental misconduct, such as support or nonsupport or maintaining or failing to maintain contact with the child. *Block,* 580 N.W.2d at 154; *Keegan,* 525 N.W.2d at 699–700; *Guthrie,* 45 S.W.3d at 725–726; *G.K. v. K.A.,* 936 S.W.2d 70, 73 (Tex.App.1996).

(7) The degree of community respect associated with the present or changed name. *D.R.S. v. R.S.H.,* 412 N.E.2d 1257, 1263 (Ind.Ct.App.1980); *Guthrie,* 45 S.W.3d at 725–726.

(8) A positive or adverse effect a name change may have on the bond between the child and either parent or the parents' families. *Schiffman,* 169 Cal.Rptr. at 922–23, 620 P.2d 579; *In re Marriage of Nguyen,* 684 P.2d 258, 260 (Colo.Ct. App.1983), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 785, 83 L.Ed.2d 779 (1985); *Gulsvig,* 498 N.W.2d at 728–30; *Block,* 580 N.W.2d at 154; *Keegan,* 525 N.W.2d

at 699–700; *Guthrie,* 45 S.W.3d at 725–726.

(9) Any delay in requesting or objecting to name change. *Guthrie,* 45 S.W.3d at 725–726.

(10) The preference of the child if the child is of sufficient maturity to express a meaningful preference. *Gubernat,* 657 A.2d at 868; *Guthrie,* 45 S.W.3d at 725–726.

(11) Motivation of the parent seeking the change as an attempt to alienate the child from the other parent. *Guthrie,* 45 S.W.3d at 725–726.

(12) And any other factor relevant to the child's best interest.

Thus, the determination of the child's best interest in a name dispute should be resolved by identifying and weighing various factors specific to each case. *Guthrie,* 45 S.W.3d at 725–726.

While the district court did not consider all of the matters in the nonexclusive list included above, the district court did engage in the following best interest analysis when considering the request to establish Bradyn's surname as Montgomery as opposed to Wells:

John lists as his reasons for the Court changing Bradyn's surname to Montgomery 1) that his (John's) name will always be Montgomery; 2) Angela's last name may change from "Wells" in the event she remarries. Angela, in fact, testified that she plans to marry a man by the name of Beals in the near future and will change her last name to Beals; 3) that it will be in Bradyn's best interest for him to have the last name Montgomery; and 4) that it will give Bradyn a sense of belonging to have the Montgomery last name.

Angela cites as her reasons for the Court to maintain Bradyn's last name as Wells to include 1) Bradyn's last name is now Wells; 2) Bradyn's last name of Wells is already on several records and documents, including his Social Security card, birth certificate and medical records; 3) it would give Bradyn a sense of belonging to the Wells' family; 4) that there is no real reason to change Bradyn's name; and 5) Angela's concern that John "might not always be there" for Bradyn.

. . . .

At Bradyn's tender age [14 months] he has no present concept of his last name and would not be adversely affected by a change of that name.

Angela testified that she will be marrying in the near future and will be changing her last name to Beals. In that event, Bradyn will not have the same last name of his mother, stepfather or any new siblings that might arrive. It appears that Angela made the decision to give Bradyn the last name of Wells, without input from John.

The name a child carries is one of the first and most fundamental decisions that parents make. A child's name reflects tradition, heritage, and family pride. It is often a means of honoring loved ones and a way of giving a sense of belonging to the child.

*Keegan v. Gudahl,* 525 N.W.2d 695, 697 (S.D.1994). Both Angela and John wish to have that sense of family tradition, heritage and pride be reflected in Bradyn's last name, yet only one may prevail. As the district court noted, this is a very close question.

We agree with the district court that it is in Bradyn's best interest to carry the surname "Montgomery." First, we echo the district court's finding that because of his young age, a best interests's analysis does not include Bradyn's familiarity with or appreciation of his current surname. We also consider that neither party has

acted at all times with Bradyn's best interests in mind. Angela testified that she would prefer that John not be involved in Bradyn's life, as she alleged that John acted abusively toward her during her pregnancy and had a problem with alcohol consumption. To her credit, Angela has modified her position, realizing the importance to Bradyn of having contact with his father. While John did not legally acknowledge paternity or pay child support for the first months of Bradyn's life he did attend several prenatal medical appointments with Angela, and came to the hospital as soon as he was notified of Bradyn's birth. A few months later, John filed a petition to establish paternity, custody, support and visitation, taking a positive step toward his responsibilities to Bradyn. As the district court found, both Angela and John are now willing to promote Bradyn's best interests.

John and Angela each assert that having his or her last name will benefit Bradyn by giving him a sense of belonging to their separate extended families. John also believes that because he is the non-custodial parent, Bradyn should have his surname to help preserve his parental bond and relationship with his son. Of concern is that at the time of trial, Angela was expecting another child by another man, whom she planned on marrying and taking his last name. This would result in Bradyn having a different last name than Angela, the stepfather, and any children of that marriage. *Cf. Gulsvig*, 498 N.W.2d at 729 (where the court relied on mother's assurance to retain her present surname, which was the surname of the child, in the event she remarried). If Bradyn carries John's surname, he will at least have a familial-name identity to one of his parents. Therefore, upon review of all of the evidence presented, weighing the best interests considerations set forth above, and giving weight to the district court's fact and credibility findings, we conclude that the best interests considerations support "Montgomery" as Bradyn's surname.

**AFFIRMED.**