**IN THE COURT OF APPEALS OF IOWA**

No. 16-0687
Filed October 26, 2016


**LUKE A. GIEGERICH,**
       Petitioner-Appellee,

**vs.**

**SAMANTHA A. LAHR,**
       Respondent-Appellant.
_____


Appeal from the Iowa District Court for Dubuque County, Monica L.

Ackley, Judge.


Samantha Lahr appeals the district court's order placing physical care with

Luke Giegerich and determining the child's surname. **AFFIRMED.**


Christopher M. Soppe of Pioneer Law Office, Dubuque, for appellant.

Kim C. Roddick of Reynolds & Kenline, L.L.P., Dubuque, for appellee.


Considered by Danilson, C.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Samantha Lahr appeals the district court's order placing physical care with Luke Giegerich, the child's father, and determining the child's surname. We find there are communication problems between the parents, Samantha has not supported Luke's role in the child's life, and there is a history of conflict between the parents. These findings support placing physical care with Luke. We also find the child should be given the Luke's surname because the child will live with Luke and Samantha is unsure if she will change her name if she remarries, potentially causing the child to not share a surname with a family member. Accordingly, we affirm.

## I. Background Facts and Proceedings

Samantha and Luke dated from February 2013 to October 2013, and lived together during their relationship. Samantha is married to Jesse Lahr, though the two had been estranged for some time before her relationship with Luke. She and Jesse had two children. After difficulties in their relationship and learning of Samantha's pregnancy, Luke and Samantha broke up. Samantha told Luke the child was Jesse's so Luke had "an easy way out the door" which she "thought was best at the time." Although knowing of his whereabouts since their breakup, Samantha waited six months to inform Luke of the child's birth. A DNA test later confirmed Luke was the father and the parents began to discuss establishing a relationship between Luke and the child. The parties agreed to visitation, and, after some time, a temporary visitation order was entered.

Luke filed an action to establish paternity, custody, physical care, visitation, and child support. Luke asked for joint legal custody and joint physical

care. Because the child was born during Samantha's marriage, Jesse was presumed to be the legal father. He was joined as a third party to the action and, eventually he was disestablished as the child's legal father. Samantha and Luke attended mediation and agreed to all the issues, including the child's surname, except the division of physical care. A hearing was held on January 7, 2016, where Jesse, Samantha, Luke, and other relatives testified regarding paternity, custody, visitation, and child support.

At the close of the hearing the district court asked what the child's surname would be. The parties reported the child would take the mother's maiden name, which Samantha stated she would assume after her divorce from Jesse was final. The court expressed dissatisfaction with this arrangement at which point Luke asked that the child be given his surname.

The district court subsequently entered a ruling ordering joint legal custody and placing physical care with Luke, as well as ordering the child's surname be changed to Giegerich. Samantha appeals the order of physical care and the order to change the surname.

## II. Scope of Review

Our review of equitable actions is de novo. Iowa R. Civ. P. 6.907. We have a duty to examine the entire record and adjudicate anew the rights on the issues properly presented. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). We will defer to the district court's determinations of credibility as the court has a unique opportunity to hear the evidence and view the witnesses. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

### III. Physical Care

Our supreme court has established a non-exclusive list of factors we are to consider in deciding what arrangement of physical care is in the best interests of the child. They are: (1) stability and continuity of caregiving, (2) the parents' ability to communicate, (3) a history of conflict between the parents, and (4) the degree to which the parents agree to a parenting approach. *See In re Marriage of Hansen*, 733 N.W.2d 683 (Iowa 2007). These factors apply whether the parents are married or unmarried. *Heyer v. Peterson*, 307 N.W.2d 1, 7 (Iowa 1981). Our supreme court also points us to the Iowa Code for additional factors to consider. *Hansen*, 733 N.W.2d at 696 ("Although Iowa Code section 598.41(3) does not directly apply to physical care decisions, we have held the factors listed here as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child."). The code's factors are as follows:

> 3. In considering what custody arrangement . . . is in the best interest of the minor child, the court shall consider the following factors:
> a. Whether each parent would be a suitable custodian for the child.
> b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.
> c. Whether the parents can communicate with each other regarding the child's needs.
> d. Whether both parents have actively cared for the child before and since the separation.
> e. Whether each parent can support the other parent's relationship with the child.
> f. Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.
> g. Whether one or both the parents agree or are opposed to joint custody.
> h. The geographic proximity of the parents.

i. Whether the safety of the child, other children, or the other parent will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation.

j. Whether a history of domestic abuse, as defined in section 236.2, exists. In determining whether a history of domestic abuse exists, the court's consideration shall include but is not limited to commencement of an action pursuant to section 236.3, the issuance of a protective order against the parent or the issuance of a court order or consent agreement pursuant to section 236.5, the issuance of an emergency order pursuant to section 236.6, the holding of a parent in contempt pursuant to section 664A.7, the response of a peace officer to the scene of alleged domestic abuse or the arrest of a parent following response to a report of alleged domestic abuse, or a conviction for domestic abuse assault pursuant to section 708.2A.

k. Whether a parent has allowed a person custody or control of, or unsupervised access to a child after knowing the person is required to register or is on the sex offender registry as a sex offender under chapter 692A.

Iowa Code § 598.41(3) (a)-(i) (2015).

We are also careful to note "[t]here is no preference for mothers over fathers, or vice versa." *Hansen*, 733 N.W.2d at 700.

In the case before us, we find the most important factors to consider are the parents' ability to communicate with each other regarding the child's needs, whether a parent will support the other parent's relationship with the child, and the history of conflict between the parents.

Throughout trial Samantha complained she and Luke could not effectively communicate; Luke consistently testified they had an excellent relationship and co-parented well. At trial Samantha also complained Luke refused to communicate when the child had last eaten, slept, and other similar information. Luke denied this and asserted he was very communicative. Samantha further complained Luke refused to share clothing, toys, and shoes, going so far as to take shoes off the child when Samantha resumed care. Luke claims these

instances are isolated and only happen when no other clothes or shoes would be left at his house.

Testimony at trial showed Samantha did not consistently support Luke's role in the child's life. Samantha continually encouraged a father-like relationship between the child and both her current boyfriend and her estranged husband. While encouraging a relationship between the child and her boyfriend and especially with the father of the child's half-siblings is not necessarily wrong, when it comes at the expense of the child's relationship with the father it can become damaging to the child's development. Luke, on the other hand, has neither shown a tendency to introduce a usurper of Samantha's role nor encouraged disharmony between Samantha and the child.

Finally, while Samantha and Luke showed a commendable ability to compromise at mediation, any veneer of cooperation and goodwill has been erased. The fragility of the agreement, along with the hostility of the trial and appeal, demonstrates to us a good deal of conflict exists between the parties.

On the balance of these factors, we affirm the district court's decision to place physical care with Luke.

## IV. Surname of the Child

While the district court and both parties phrase this issue as a name change, it is not. Instead it is an appeal of the district court's ruling on an initial determination of the child's name. A mother does not have the right to name the child by virtue of custody at birth, and a parent should gain no advantage from unilaterally naming the child. *In re Marriage of Gulsvig*, 498 N.W.2d 725, 729

(Iowa 1993) (citations omitted). The district court's ruling was therefore to determine Luke's challenge to the name chosen by Samantha.

In initially determining the child's surname "our focus is the best interests of the child." *Montgomery v. Wells*, 708 N.W.2d 704, 708 (Iowa Ct. App. 2005). We have not been provided an exhaustive and definitive list of factors, but our court has considered the following:

> (1) Convenience for the child to have the same name as or a different name from the custodial parent.
> (2) Identification of the child as part of a family unit.
> (3) Assurances by the mother that she would not change her name if she married or remarried if the child maintains the mother's surname.
> (4) Avoiding embarrassment, inconvenience, or confusion for the custodial parent or the child.
> (5) The length of time the surname has been used.
> (6) Parental misconduct, such as support or nonsupport or maintaining or failing to maintain contact with the child.
> (7) The degree of community respect associated with the present or changed name.
> (8) A positive or adverse effect a name change may have on the bond between the child and either parent or the parents' families.
> (9) Any delay in requesting or objecting to name change.
> (10) The preference of the child if the child is of sufficient maturity to express a meaningful preference.
> (11) Motivation of the parent seeking the change as an attempt to alienate the child from the other parent.
> (12) And any other factor relevant to the child's best interest.

*Id.* at 708-09 (citations omitted).

The parties agreed to give the child Samantha's maiden name, though she plans to resume that name only when her divorce from Jesse is final. Testimony showed Samantha intended to marry her boyfriend and would again change her last name. We share the lower court's concern the child will not be identified with the family unit should she marry and change her name, as the mother, father, and half-siblings would not share the child's surname.

Additionally, as the child has been placed with the father, it will be most convenient for both the child and the custodial parent for the child's surname to be Giegerich. Therefore, we affirm the decision of the district court.

**AFFIRMED**