# IN THE COURT OF APPEALS OF IOWA

No. 17-0284
Filed December 20, 2017

**JUSTIN EUGENE THOMPSON,**
  Petitioner-Appellant,

**vs.**

**ALLYSON ROSE FOWLER,**
  Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

A father appeals a district court order determining visitation and the surname of his minor child.  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Richard N. Tompkins, Jr., of Tompkins Law Office, Mason City, for appellant.

Jaclyn M. Zimmerman of Grefe & Sidney, P.L.C., Des Moines, for appellee.

Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Justin Thompson appeals a district court order determining visitation and the surname of his minor child in favor of the child's mother, Allyson Fowler. Justin argues (1) the district court's ruling placing visitation in Allyson's discretion is an impermissible delegation of judicial authority and (2) the district court had no authority to rule on the child's surname. Both parties request an award of appellate attorney fees.

## I.    Background Facts and Proceedings

The parties met online through a mutual friend when Allyson was sixteen years old and Justin eighteen. Their first in-person meeting was approximately two years later. They started dating in late 2006 or early 2007 and moved in together in Nebraska in 2008. In March 2010, United States Marshalls raided the parties' residence and seized a number of Justin's electronic devices. Justin was subsequently federally charged with receipt and distribution of child pornography, *see* 18 U.S.C. § 2252A(a)(2) (2010), and was arrested in July. He pled guilty to the charge in September. Justin, awaiting sentencing, moved back to Des Moines in November to be closer to his family. Allyson remained in Nebraska. After Justin's move to Des Moines, Allyson discovered she was pregnant. Shortly thereafter, Allyson moved to Florida to live with her father. In December, Justin was sentenced to five years in prison. He began serving his sentence in a federal prison in Minnesota in February 2011.

The parties' child was born in July 2011. Shortly after the child's birth, Allyson and the child moved to Des Moines to live with Justin's parents. While Allyson and the child were living with Justin's parents, they normally visited Justin

in prison every other month. In October 2012, Allyson officially ended her relationship with Justin. She moved out of his parents' home a few months later. Allyson discontinued visiting Justin in prison, but the child continued to attend visits at the prison with Justin's parents. Justin was released from prison in December 2014, after which he was required to report to the Fort Des Moines halfway house for six months, register as a sex offender for ten years, and be on probation for five years.

While incarcerated, Justin did not complete any sex-offender treatment or related services. Justin testified that none of those services were offered at his facility and that he would have had to transfer to a prison in North Carolina to receive treatment while incarcerated. The record shows that Justin discussed that possibility with Allyson early in the period of his incarceration, but he ultimately decided to stay at the prison in Minnesota.

Justin was released from the halfway house in June 2015, after which he moved in with his parents and began his court-ordered sex-offender treatment. Because Justin is a registered sex offender per Iowa Code chapter 692A (2015), there are restrictions on where he may go and with whom he may have contact. Justin's probation officer and treatment providers have limited contact with his child, requiring the presence of an approved chaperone to supervise visits. Justin's first out-of-custody, chaperoned visit with the child occurred in August 2015, but in September, Allyson discontinued allowing Justin to have visitation with the child. In December, Justin filed a petition to establish paternity, custody, visitation, and support in which he requested, among other things, supervised visitation and establishment of the child's last name as "Fowler-Thompson."

Allyson requested the court restrict Justin's visitation and establish the child's last name as "Fowler."[1]

Trial commenced in September 2016. Allyson generally testified her desire to restrict visitation was based on Justin's lack of progress in probation and sex-offender therapy. She also testified that if Justin was able to make progress in the future, she would be willing to allow visitation. At trial, Justin testified he agreed his sexual attraction to children puts his daughter at risk, he recently violated his probation by viewing pornography, and his return to prison in the near future "is a possibility."

In its ruling, the district court granted Allyson sole legal custody and physical care of the child and, in relevant part, ordered (1) any visitation between Justin and the child shall be at Allyson's discretion and (2) the child's last name to be changed to Fowler. Justin filed a motion to enlarge or amend pursuant to Iowa Rule of Civil Procedure 1.904(2). The district court declined to amend or enlarge its ruling on all issues relevant to this appeal. As noted, Justin appeals.

## II.     Standard of Review

Appellate review of a district court's determinations regarding visitation and a child's surname is de novo. *Montgomery v. Wells*, 708 N.W.2d 704, 705 (Iowa Ct. App. 2005) (surname); *In re Marriage of Ertmann*, 376 N.W.2d 918, 920 (Iowa Ct. App. 1985) (visitation). "We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented." *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). We give weight to the

---

[1] At the time of trial the child's birth certificate showed her last name as Fowler-Thompson.

factual findings of the district court, especially concerning the credibility of witnesses, but we are not bound by them. *Id.*; *see* Iowa R. App. P. 6.904(3)(g). Our primary concern is the best interest of the child. *See In re Marriage of Ford*, 563 N.W.2d 629, 631 (Iowa 1997).

## III. Error Preservation

As a preliminary matter, Allyson contends Justin failed to preserve error on either of his arguments on appeal. She argues that although both visitation and the child's surname were decided by the district court and are generally preserved, the specific theories argued by Justin on appeal were not made below and therefore have not been preserved for our review. Given our de novo standard of review and because the issues of visitation and the child's surname were ultimately decided by the district court, we will pass on the question of error preservation and address the merits of Justin's arguments. *Cf. Moses v. White*, No. 17-0823, 2017 WL 5185450, at *2 n.4 (Iowa Ct. App. Nov. 8, 2017); *In re Marriage of Malloy*, No. 09-0481, 2009 WL 4241632, at *7 (Iowa Ct. App. Nov. 25, 2009); *In re Marriage of Buffington*, Nos. 01-0727, 02-0009, 2002 WL 31114058, at *3 (Iowa Ct. App. Sept. 25, 2002); *see generally State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (bypassing error-preservation concerns and proceeding to the merits).

## IV. Merits

### A. Visitation

Justin argues the district court's ruling placing visitation in Allyson's sole discretion is an impermissible delegation of judicial authority. "The rule is well established in all jurisdictions that the right of access to one's child should not be

denied unless *the court* is convinced such visitations are detrimental to the best interest of the child." *Smith v. Smith*, 142 N.W.2d 421, 425 (Iowa 1966) (emphasis added) (citation omitted). "The feasible exercise of a parent's right of visitation should be safeguarded by a *definite provision* in the order or decree of the court awarding custody of the child to another person. *Id.* (emphasis added) (citation omitted). An order concerning visitation

> should not make the right of visitation contingent upon an invitation from the party having the custody of the child, or require the consent of one parent for the other to visit the child, . . . thereby leaving the privilege of visitation entirely to the discretion of the party having the child in custody.

*Id.* (alteration in original) (citation omitted). This court recently repeated our supreme court's position in *Smith* and noted "[d]elegation of visitation parameters to the opposing party is particularly troublesome." *In re Marriage of Retterath*, No. 14-1701, 2015 WL 6509105, at *4 (Iowa Ct. App. Oct. 28, 2015).

In light of these authorities, we reverse the portion of the district court's order delegating discretion over visitation to Allyson and remand for the entry of an order defining the parameters of visitation consistent with Iowa Code sections 598.41 and 598.41A. Because our record does not reveal Justin's current status, under the circumstances of this case, namely Justin's child-pornography conviction under 18 U.S.C. section 2252A(a)(2), on remand the district court should determine whether Justin has successfully completed sex offender treatment and whether he is statutorily eligible for visitation.[2]

---

[2] *See* Iowa Code § 598.41A(2) ("Notwithstanding section 598.41, an individual who is a parent of a minor child and who has been convicted of a sex offense against a minor as defined in section 692A.101, is not entitled to visitation rights while incarcerated. While on probation, parole, or any other type of conditional release including a special

B. Surname Determination

Justin simply argues the district court had no authority to rule on the child's surname. As this court has previously stated, "When the [district] court first entertains an action between the parents to determine their legal rights and relationships with each other and the child, the court may also consider the legitimacy of the child's original naming as part of its determination of the child's legal status and custody." *Montgomery*, 708 N.W.2d at 706. It is true that the child's last name is listed as "Fowler-Thompson" on her birth certificate, but Allyson testified she only hyphenated the child's name because she had been subjected to emotional abuse by Justin and felt pressured by him to do so. Under such circumstances, we determine that Allyson's request to establish the child's name as "Fowler" is a challenge to the initial name determination. *Cf. id.*

The present case contemplates Iowa Code chapter 600B, which "confers subject matter jurisdiction upon the district court to decide cases of paternity, custody, visitation, and support between unmarried parents." *Id.* at 707. "[S]ection 600B.40 grants the district court authority to determine matters of custody and visitation as it would under Iowa Code section 598.41." *Id.* We have recognized that the supreme court "has held that determinations of custody under section 598.41 encompass initial determinations of a child's surname, as one's surname is indicative of one's legal status." *Id.* (discussing *In re Marriage*

___

sentence for such offense, visitation shall be denied until the parent successfully completes a treatment program approved by the court, if required by the court."); *id.* § 692A.101(28) (defining "sex offense against a minor" as any "offense for which a conviction has been entered for a sex offense classified as a tier I, tier II, or tier III offense under [chapter 692A] if such offense was committed against a minor, or otherwise involve[d] a minor"); *id.* § 692.102(1)(a)(13) (defining tier I offenses under chapter 692A to include convictions relating to "[m]aterial containing child pornography in violate of 18 U.S.C. 2252A").

*of Gulsvig*, 498 N.W.2d 725 (Iowa 1993)). Accordingly, we repeat our holding "that the district court does have authority under Iowa Code section 600B.40, as it does in section 598.41, to consider and enter a ruling on a child's legal status, including the determination of a child's surname." *Id.*

We limit our analysis regarding the surname determination to Justin's sole argument on appeal: that the district made the determination absent any statutory authority. *See* Iowa R. App. P. 6.903(2)(g)(3); *see also Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments."); *Ingraham v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume.").

We affirm the surname determination.

**V.    Appellate Attorney Fees**

Both parties request an award of appellate attorney fees. *See* Iowa Code § 600B.26 (authorizing an award of attorney fees "[i]n a proceeding to determine custody or visitation"); *Schaffer v. Frank Moyer Constr. Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (holding that a statute allowing an award of trial attorney fees permits an award of appellate attorney fees as well). An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). In determining whether to award attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the

party making the request was obligated to defend the district court's decision on appeal. *Id.* In consideration of these factors, we decline to award appellate attorney fees to either party. Costs on appeal are assessed equally between the parties.

## VI. Conclusion

We reverse the portion of the district court's order delegating discretion over visitation to Allyson and remand for the entry of an order defining the parameters of visitation consistent with Iowa Code sections 598.41 and 598.41A. Finding the district court had authority to rule on the child's surname, we affirm that portion of its order. We decline to award appellate attorney fees to either party.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**