# IN THE COURT OF APPEALS OF IOWA

No. 21-0212
Filed September 22, 2021

**ANTHONY PETERSON,**
        Petitioner-Appellee,

**vs.**

**BETHANY JO THURSTON,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Greene County, Adria Kester, Judge.


        Bethany Thurston appeals from a decree establishing paternity, custody, and related matters. **AFFIRMED.**


        Scott L. Bandstra, Des Moines, for appellant.

        Vicki R. Copeland of Wilcox, Gerken, Schwarzkopf, Copeland & Williams, P.C., Jefferson, for appellant.


        Considered by Vaitheswaran, P.J., Greer, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**VAITHESWARAN, Presiding Judge.**

Bethany Thurston and Anthony Peterson are the parents of a child born in 2019. Anthony filed a petition to establish paternity, custody, and related matters and to overcome the paternity of Bethany's husband. *See* Iowa Code § 600B.41A(1) (2020) ("Paternity which is legally established may be overcome . . . if subsequent blood or genetic testing indicates that the previously established father of a child is not the biological father of the child. . . . [T]his section applies to the overcoming of paternity which has been established . . . by operation of law when the established father and the mother of the child are or were married to each other . . . ."). After paternity in Bethany's husband was disestablished, the district court held an evidentiary hearing and granted Anthony sole legal custody and physical care of the child, subject to extraordinary visitation with Bethany. On appeal, Bethany contends the district court should have (1) granted joint legal custody and (2) awarded her physical care of the child.

Iowa Code section 600B.40 provides the district court with "authority to determine matters of custody and visitation as it would under Iowa Code section 598.41," section 600B.40's counterpart for divorcing or separating parents. *See* *Montgomery v. Wells*, 708 N.W.2d 704, 707 (Iowa Ct. App. 2005). Courts consider the nonexclusive factors set forth in section 598.41(3). *See* Iowa Code § 600B.40(2). The relevant factors include whether each parent would be a suitable custodian for the child, whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents, whether the parents can communicate with each other about the child's needs, whether both parents have actively cared for the child

before and since the separation, whether each parent can support the other parent's relationship with the child, whether one or both parents agree or oppose joint custody, and the geographic proximity of the parents. *See id.* § 598.41(3)(a), (b), (c), (d), (e), (g), (h). "The court shall also consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement." *Id.* § 598.41(1)(c). "If the district court does not grant joint legal custody, the court must cite clear and convincing evidence, according to the enumerated factors listed above, that joint legal custody is unreasonable and not in the child[]'s best interests 'to the extent that the legal custodial relationship between the child and a parent should be severed.'" *In re Marriage of Gensley*, 777 N.W.2d 705, 714 (Iowa Ct. App. 2009) (quoting Iowa Code § 598.41(2)(b)).

The district court cited these factors. The court stated:

> Both parents love the child and both might be a suitable custodian for the child if Bethany would make some changes in the way she deals with Anthony. The psychological and emotional needs of [the child], as well as his development, will suffer if there is a lack of active contact with and attention from both of his parents. Bethany and Anthony are not able to communicate with each other regarding [the child] and his needs. Both parents have testified to the breakdown of communication and the seriousness and protracted nature of their inability to work together. This issue of communication is more than the somewhat normal acrimony that happens in a custody case. Bethany testified, "I feel that if we had joint legal custody, you guys would be tired of hearing from us." Meaning that if they were forced to make decisions together, they would constantly be in court. The level of hostility Bethany holds for Anthony is significantly higher than the level of hostility that Anthony holds for Bethany. Anthony is willing to support Bethany's relationship with [the child]. Bethany has been unwilling to support Anthony's relationship with [the child]. The court is hopeful that Bethany will adapt once the court's decision is made. The court finds there is no history of domestic abuse between the parties. There is clear and convincing evidence that joint custody is unreasonable and

not in the best interest of [the child] and the legal custodial relationship between [the child] and Bethany should be severed.

On our de novo review, we agree with the court's findings.

We are particularly swayed by Bethany's active efforts to curtail Anthony's contacts with the child. Bethany moved to Texas while the paternity action was pending. She gave Anthony "[z]ero advance notice" of her move. When Anthony was asked why he believed she made the move, he responded, "[t]o keep [the child] from me." Bethany did not contradict his response. When asked why she failed to afford Anthony prior notice of the move, she disingenuously responded that he "never" got back to her about visitation and financial assistance. In fact, the district court was forced to postpone resolution of those issues until the paternal rights of Bethany's husband were disestablished. *Cf. Ruden v. Peach*, 904 N.W.2d 410, 412, 415 (Iowa Ct. App. 2017) (finding mother's move to adjacent state after seeking permission to relocate "was motivated less by a desire to remove [the father] from the child's life than by a desire to use her engineering degree to provide for her family when she was unable to find employment near Dubuque").

Bethany's additional assertion that she did not believe she would be "breaking any laws" by leaving the State underscored her indifference to Anthony's relationship with the child, as did her responses to requests for admissions. She denied it was in her child's best interests to have Anthony's paternity established and she denied contact between Anthony and the child needed to start as soon as possible. She conditioned visitation on the grant of a "[c]ourt order" despite her

knowledge that Anthony was the father of the child. As a result, Anthony saw the child no more than "[p]robably a dozen" times in one year and two months.

Faced with this evidence and the district court's fact findings, Bethany has softened her approach on appeal, requesting joint rather than sole legal custody. We set aside the question of whether she may change her theory on appeal. *See Clark v. Est. of Rice ex rel. Rice*, 653 N.W.2d 166, 172 (Iowa 2002) (stating appellant could not "change this theory" on appeal). In light of her concerted efforts to alienate Anthony from the child, as well as the other factors cited by the district court, we affirm the district court's grant of sole legal custody to Anthony.

As noted, Bethany also seeks reversal of the physical-care determination. "Physical care" is "the right and responsibility to maintain a home for the minor child and provide for routine care of the child." Iowa Code § 598.1(7).

In granting Anthony physical care of the child, the district court made the following pertinent findings:

> There is no question that Bethany has arranged for more of the day-to-day affairs related to [the child]. . . . [I]t is equally important to consider that Anthony wanted to be involved and Bethany blocked his involvement. . . . [W]hile she said the right things during trial, she had minimal concern about taking [the child] to the State of Texas, knowing that the move would make it extremely difficult for Anthony to be involved in their son's life. . . .
> Another significant factor in Anthony's favor is his willingness to adapt and accommodate for the needs of [the child] in an appropriate manner. He is simply better situated for raising a child and supporting and fostering a relationship with the other parent. . . .
> Both Anthony and Bethany appear to be concerned regarding the welfare of their child and both have appropriate homes for the care of a child. However, Bethany is not supportive of Anthony and ensuring a relationship exists between Anthony and [the child]. This is very concerning. Anthony's actions have demonstrated a greater willingness to foster a relationship between [the child] and Bethany than Bethany. Anthony has been appropriate in his concerns and his protective capacity regarding [the child]. He has demonstrated

open and honest communication with Bethany regarding [the child]. Bethany has not demonstrated she is always able to be open and honest with others regarding [the child] and has engaged in behavior that does not foster a relationship between Anthony and [the child].

On our de novo review, we agree with the findings. We affirm the district court's grant of physical care to Anthony.

**AFFIRMED.**