# IN THE SUPREME COURT OF IOWA

No. 08–0729

Filed October 16, 2009

**JOSHUA RICHARD BRAUNSCHWEIG,**

Appellee,

vs.

**SUMMER RAE FAHRENKROG,**
f/k/a **SUMMER RAE FRANK,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Buena Vista County, John P. Duffy, Judge.

Plaintiff seeks further review of the court of appeals decision reversing the district court's grant of plaintiff's application to change the surname of the parties' minor child. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED.**

James R. Van Dyke, Van Dyke & Werden, P.L.C., Carroll, for appellant.

Joshua J. Walsh, Gailey and Walsh Law Office, Newell, for appellee.

**BAKER, Justice**.

Appellee, Joshua Braunschweig, seeks further review of the court of appeals decision reversing the district court's grant of his application to change the surname of the parties' minor child. The court of appeals determined the matter was governed by the name change procedures under Iowa Code chapter 674 instead of the procedures for initial name determinations under Iowa Code chapter 598. We determine this case is a name change governed by Iowa Code chapter 674, and the requirements therein were not met to allow the district court's grant of the name change. The decision of the court of appeals is affirmed.

## I. Background Facts and Proceedings.

On April 5, 2003, Summer Frank gave birth to a baby boy, who she named Carter James Frank. At the time of Carter's birth, there was a question of his paternity. Fahrenkrog[1] obtained a birth certificate showing she was the mother of the child, and the father of the child was unknown. In May 2004, paternity testing revealed Joshua Braunschweig as Carter's natural father.

Braunschweig filed a petition to determine paternity, custody and visitation rights, and child support obligations in July 2004. The case was settled by stipulation and agreement in April 2005 and approved by the court by decree. The agreement determined the parties would have joint custody of Carter, with Fahrenkrog having primary physical care of Carter and Braunschweig liberal visitation rights. The decree confirmed Braunschweig as the natural father of Carter James Frank. There is no mention in the petition, decree, or agreement of Braunschweig's desire to

---

[1]Since Carter's birth, Summer has married, and her surname is now Fahrenkrog.

change Carter's surname; instead, the action proceeded as if the child's last name was Frank.

Braunschweig filed another petition in 2007, requesting the court to place his name on Carter's birth certificate and change Carter's surname to Braunschweig. Fahrenkrog resisted changing Carter's surname but did not challenge Braunschweig's request to be named as the child's father on Carter's birth certificate.[2]

After a hearing on Braunschweig's petition, the district court concluded the petition to change Carter's surname sought an initial determination under Iowa Code chapter 598. The district court applied the best interest of the child standard and decided it was in the best interest of Carter to have his surname changed to Braunschweig.

Fahrenkrog appealed the district court decision, which we routed to the court of appeals. The court of appeals reversed the district court, holding Braunschweig's petition was a legal action for a name change rather than an initial determination of Carter's name. The Iowa name change statute, Iowa Code section 674.6 (2005), requires that any parent listed on the birth certificate consent to the name change. Fahrenkrog did not consent to the proposed name change. The court of appeals, therefore, found the requirements for a name change were not met, and Carter's last name could not be changed.

Braunschweig filed an application with this court for further review.

---

[2]Braunschweig's action to place his name on the birth certificate was unnecessary as the decree established his paternity and, upon his request with a certified copy of the decree, the state registrar is required to issue a new birth certificate reflecting his status as the father. Iowa Code § 144.40 (2005).

## II. Scope of Review.

Our scope of review in a surname dispute is de novo. *See In re Marriage of Gulsvig*, 498 N.W.2d 725, 727–28 (Iowa 1993). This case also requires our interpretation of statutory language. On issues of statutory construction, our review is for correction of errors at law. *In re G.J.A.*, 547 N.W.2d 3, 5 (Iowa 1996).

## III. Discussion and Analysis.

The issue we must address is whether the court of appeals erred in determining Braunschweig's petition was an application for a name change, and therefore governed by Iowa Code section 674.6, rather than an initial determination of the child's name. Braunschweig claims it is an initial determination under Iowa Code section 598.41. This section requires the court determine the best interest of the child at issue, and Braunschweig contends it would be in Carter's best interest to have his last name. Fahrenkrog asserts the court of appeals' ruling was correct, as this proceeding is the second action between the parties concerning Carter. She claims Braunschweig failed to request a name change in his first action, and, therefore, this second action must proceed under chapter 674.

**A. Nature of the Action.** The distinction between a name change under Iowa Code section 674.6 and an initial name determination under Iowa Code section 598.41 is critical. Under Iowa Code section 674.6, if the child is under the age of fourteen, the consent of both parents is a prerequisite to the child's name change unless certain other conditions are met. Because Fahrenkrog refuses to consent to Braunschweig's petition, and none of the statute's other conditions were met, under Code section 674.6, Braunschweig's request for a name change would be denied. If, conversely, this is an initial determination of the child's name,

we must decide what would be in Carter's best interests. *Montgomery v. Wells*, 708 N.W.2d 704, 708 (Iowa Ct. App. 2005).

We have addressed this issue in several past cases. In *Gulsvig*, the mother of the child had a surname other than her husband's entered on the child's birth certificate. *Gulsvig*, 498 N.W.2d at 726. The couple, who had been married for less than a year, sought a dissolution not long after the child was born. *Id.* The dissolution was granted, and the father was awarded visitation, but the court refused to change the surname of the child. *Id.* The father appealed the district court's determination of child support, visitation schedule, and refusal to change the child's surname. *Id.* After reviewing the case, we determined "the mother does not have the absolute right to name the child because of custody due to birth. Consequently, [the mother] should gain no advantage from her unilateral act in naming [the child]." *Id.* at 729 (citations omitted). When the action is a challenge to the legitimacy of a child's name unilaterally chosen by one parent, the action is not governed by chapter 674 as it "is simply not a name change case." *In re Name Change of Quirk*, 504 N.W.2d 879, 882 (Iowa 1993) (Carter, J., concurring specially).

Previously, this court derived authority to change a child's name from the state's custody statute, Iowa Code section 598.41. *Gulsvig*, 498 N.W.2d at 728. This section, labeled "Custody of children," gives the court discretion to determine custody and physical care arrangements for the best interest of the child. Iowa Code § 598.41(1)(*a*). The court has stated that "an infant child's name is an incident of 'the child's legal status.'" *Gulsvig*, 498 N.W.2d at 728 (quoting Iowa Code § 598.4(2) (1991)). The court, therefore, may change a child's name pursuant to

custody determinations under this section. *Id.* This section's counterpart for unmarried parents is Iowa Code section 600B.40.[3]

Under Iowa law, Braunschweig clearly had the right to contest the surname on Carter's birth certificate at some point, because Fahrenkrog unilaterally chose that name. Braunschweig's right to adjudicate his parental rights and Carter's legal status, including his name, does not, however, answer the question presented here. The question we must answer is at what point must the name issue be addressed to qualify as an initial name determination. Iowa Code section 600B.40 provides that "[i]f a judgment of paternity is entered, the father may petition for rights of visitation or custody in the same paternity action or in an equity proceeding separate from any action to establish paternity." According to this statute, Braunschweig could, but was not required to, determine his parental rights and Carter's legal status in the paternity action. Braunschweig chose to do so.

In April 2005, by stipulation and agreement, both parents decided they would have joint custody of Carter, with Fahrenkrog having primary physical custody of Carter and Braunschweig liberal visitation rights. In this petition, settlement and decree, Carter is referred to as Carter James Frank. There is no mention in this petition or agreement of Braunschweig's desire to change Carter's surname.

It is helpful to explain Iowa's statutory process for issuing birth certificates to children with unmarried parents. Iowa Code section 144.13(3) provides that when the mother is unmarried, the name of the

---

[3]Iowa Code section 600B.40 addresses custody and visitation actions between unmarried parents. Under this section, if a judgment of paternity has been entered and the mother has not been awarded sole custody of the child, section 598.41, addressing custody and visitation actions between divorcing or separating parents, is applied by the court.

father shall not be entered on a birth certificate "unless a determination of paternity has been made pursuant to section 252A.3." Iowa Code section 252A.3(8)(*a*) provides that paternity may be established by an order of a court of competent jurisdiction. Both of these steps occurred in this case. Upon entry of the decree establishing paternity, two things should have occurred. First, the clerk of court is required to transmit this information to the state registrar of vital statistics. Iowa Code § 600B.36 ("Upon the entry of a judgment determining the paternity of a child the clerk of the district court *shall* notify in writing the state registrar of vital statistics of the name of the person against whom such judgment has been entered, together with such other facts disclosed by the records as may assist in identifying the record of the birth of the child as the same may appear in the office of said registrar." (Emphasis added.)). Second, upon notification by the clerk, the state registrar is required to amend the birth certificate to reflect the identity of the father. Iowa Code § 144.40 ("Upon . . . notification by the clerk of court of a court or administrative order establishing paternity, the state registrar shall amend a certificate of birth to show paternity if paternity is not shown on the birth certificate."); *see also* Iowa Code § 144.13(3).[4] Iowa Code section 144.40 also provides: "Upon written request of the parents, the surname of the child may be changed on the certificate to that of the father." A new or amended birth certificate is then created listing both the father and the mother, as well as the child's legal name. *See*

---

[4]The record does not reflect if this was done. It should also be noted that in 2005, Iowa Code section 144.40 was amended to provide that "the state registrar shall *establish a new certificate of birth* to show paternity if paternity is not shown on the birth certificate." Iowa Code § 144.40 (Supp. 2005) (emphasis added).

*generally* Iowa Code § 595.5(2) ("An individual shall have only one legal name at any one time.").

The court of appeals found this action was a name change under chapter 674, as opposed to an initial name determination, stating:

> [W]e conclude Braunschweig sought a name change rather than an initial determination of the child's last name. Braunschweig petitioned for an initial determination of his rights vis-à-vis his son in a separate action filed two years earlier. At that time, he could have asked the court to review the last name on the child's birth certificate. Braunschweig did not ask the court to make that determination but instead proceeded as if the child's last name was Frank.
>
> When Braunschweig petitioned the court two years later, his petition was styled a petition "to change child's surname." The caption accurately described the nature of the action. The child's legal status and his parents' rights to him were determined in the custody action. The second petition sought to change a component of the child's legal status. That petition was governed by the standards of the name change statute, Iowa Code chapter 674.

*Braunschweig v. Fahrenkrog*, No. 08–0729, 2009 WL 606252, at *1–2 (Iowa Ct. App. Mar. 11, 2009) (citations omitted).

The court of appeals relied on language in *Montgomery* to hold that Braunschweig was required to seek a name change when he initially petitioned the court to establish paternity and determine his rights. *Montgomery*, 708 N.W.2d at 706. The basis for this requirement is not apparent in *Montgomery*, nor the cases cited therein, but in this case, the court of appeals noted that "[t]o hold otherwise would allow multiple filings, effectively removing minors from the ambit of the name change statute." *Braunschweig*, No. 08–0729, 2009 WL 606252 at 2. We believe that this reference to multiple filings is an expression of the doctrine of res judicata.

We have noted that res judicata embraces two concepts: claim preclusion and issue preclusion. *Spiker v. Spiker*, 708 N.W.2d 347, 353

(Iowa 2006). Issue preclusion requires the issue actually be litigated. *Id.* It does not apply in this case, as the issue of Carter's name was not litigated in the initial paternity action. Claim preclusion (sometimes called the rule against splitting of actions), however, has no such requirement. *See Noel v. Noel*, 334 N.W.2d 146, 148 (Iowa 1983).

> The general rule of claim preclusion provides a valid and final judgment on a claim precludes a second action on that claim or any part of it. The rule applies not only as to every matter which was offered and received to sustain or defeat the claim or demand, *but also as to any other admissible matter which could have been offered for that purpose. Claim preclusion, as opposed to issue preclusion, may foreclose litigation of matters that have never been litigated.* It does not, however, apply unless the party against whom preclusion is asserted had a "full and fair opportunity" to litigate the claim or issue in the first action. A second claim is likely to be barred by claim preclusion where the "acts complained of, and the recovery demanded are the same or where the same evidence will support both actions." A plaintiff is not entitled to a second day in court by alleging a new ground of recovery for the same wrong.

*Arnevik v. Univ. of Minn. Bd. of Regents*, 642 N.W.2d 315, 319 (Iowa 2002) (emphasis added) (quoting *Whalen v. Connelly*, 621 N.W.2d 681, 685 (Iowa 2000)) (citations omitted). To invoke the doctrine of claim preclusion, three elements must be established: (1) the parties in the first and second action must be the same, (2) the claim made in the second action could have been "fully and fairly adjudicated in the prior case," and (3) a final judgment on the merits was issued in the first action. *Id.*; *accord Spiker*, 708 N.W.2d at 353.

The elements of claim preclusion are clearly met in this case. Braunschweig and Fahrenkrog were the parties in both the first and second actions. As noted above, the right to have Carter's surname changed is one of the rights provided under Iowa Code sections 600B.40 and 144.40. The issue of Carter's surname could have been fairly and

fully adjudicated in Braunschweig's original paternity action where he sought to establish his parental rights. Finally, there was a final judgment on the merits in the first paternity action, establishing Carter's legal status and Braunschweig's parental rights and responsibilities. We find that because the elements of claim preclusion are established, Braunschweig may not have a second bite at the apple by bringing a second action to seek an amended birth certificate and initial name determination.

The application of claim preclusion to this action is consistent with the statutory scheme for establishing parental rights and our prior cases addressing this issue. Braunschweig brought the original action in 2004 seeking to establish his parental rights and responsibilities. Pursuant to Iowa Code section 144.40, one of the consequences of a decree of paternity is that a new or amended birth certificate is to be issued. Iowa Code § 144.40. As noted above, a mother does not have an absolute right to name a child due to custody at birth. *Gulsvig*, 498 N.W.2d at 729. Therefore, a father who is not consulted in naming the child has a right to contest the name and the mother's unilateral act is given no effect. *Id.* Although Fahrenkrog clearly chose Carter's surname without Braunschweig's input or consent, a paternity action was brought by Braunschweig, and one of the consequences of a decree of paternity is that a new or amended birth certificate is issued. Iowa Code § 144.40. The creation of this new or amended birth certificate was no longer a unilateral act by Fahrenkrog, as Braunschweig chose to bring the action adjudicating his parental rights. He had the option of contesting Carter's surname at that time but did not. Where a father brings an action to establish paternity and adjudicate his parental rights, the time and place to contest the child's surname is when the new or amended birth

certificate is created. Anything after that time is a name change and governed under chapter 674.[5] Braunschweig chose to have his parental rights adjudicated in 2004. He did not contest Carter's surname at that time; therefore, this action is governed by Iowa Code chapter 674.

**B. Name Change Requirements.** Because a new or amended birth certificate was or should have been created in 2004, Carter's name was established and this controversy must be determined under chapter 674. "Iowa Code section 674.6 limits the authority of the district court to change the name of a minor child except upon the consent of both parents." *Quirk*, 504 N.W.2d at 881. If only one parent consents, the court is required to set the matter for hearing and give notice to the nonconsenting parent. Iowa Code § 674.6. The court may only waive the consent requirement if it finds:

> 1. That the [nonconsenting] parent has abandoned the child;
>
> 2. That the [nonconsenting] parent has been ordered to contribute to the support of the child or to financially aid in the child's birth and has failed to do so without good cause; or
>
> 3. That the [nonconsenting] parent does not object to the name change after having been given due and proper notice.

*Id.*

In this case, the district court made no findings regarding the requirements of section 674.6 because it believed this action was an initial name determination. Our de novo review of the record makes plain, however, that Fahrenkrog should prevail on the merits. First, there is no abandonment as Carter has been in Fahrenkrog's physical

---

[5]We express no opinion whether the result may be different where the paternity action is brought against the father and the father does not choose to petition for rights of visitation and custody under Iowa Code section 600B.40.

custody at all times since his birth.  Second, there has been no showing that Fahrenkrog has failed to financially support Carter.  Finally, Fahrenkrog objected to the proposed name change, both in her written resistance to Braunschweig's petition and in her arguments before the district court and the court of appeals.  In summary, had the court considered the factors precedent to the entry of a name change under section 674.6, it would have found itself without statutory authority to make the change Braunschweig requested.

**IV.  Disposition.**

We hold that Braunschweig's petition seeks a name change governed by Iowa Code section 674.6.  Because the requirements under Code section 674.6 were not met, the district court was without authority to change Carter's surname.  The decision of the court of appeals is affirmed, and the judgment of the district court reversed.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED.**