# IN THE COURT OF APPEALS OF IOWA

No. 18-2071
Filed July 24, 2019

**PATEN A. PROESCH,**
    Plaintiff-Appellee,

**vs.**

**GILBERT J. EGGERS,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Linn County, Sean W. McPartland, Judge.

Gilbert Eggers appeals from a district court order awarding physical care of his child to the child's mother, Paten Proesch. **AFFIRMED AND REMANDED.**

Joshua J. Reicks and Trista M. Beise of Schoenthaler, Bartelt, Kahler & Reicks, Maquoketa, for appellant.

Jeremiah D. Junker and Sherry L. Schulte of Bradley & Riley PC, Cedar Rapids, for appellee.

Considered by Potterfield, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

In June 2017, Paten Proesch petitioned for custody, visitation and child support. Paten and Gilbert Eggers agreed to joint legal custody of their child and other issues but could not agree whether the child should be placed in Paten's or Gilbert's physical care.

The matter was tried in October 2018. The district court entered a thorough and well-reasoned order finding Paten should have physical care of the child. Although the court believed both parents would be suitable caregivers for the child, it found and concluded "Paten is the more appropriate party to be directed to provide primary physical care for the child" under the unique circumstances of the case.

Gilbert appeals the ruling, asserting the district court's order "was not based on objective facts but on favoring of Paten as primary care giver." He also maintains the order's provision requiring the parties to not "speak disparagingly of the other" violates his First Amendment right to free speech and is therefore unenforceable. Paten contends, among other things, that Gilbert failed to preserve his claims for appellate review. Both parties request appellate attorney fees.

### I. Standard of Review.

Our review on appeal is de novo, which requires that we "make our own findings of fact." Iowa R. App. P. 6.907; *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015); *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005). Yet we recognize that the district court could listen to and observe the parties and witnesses. *See In re Marriage of Zebecki*, 389 N.W.2d 396, 398 (Iowa 1986). Although we are not bound by the factual findings of the district court, we give them

weight, especially when considering the credibility of witnesses. *See* Iowa R. App. P. 6.904(3)(g). Our overriding consideration is the best interests of the child. *See* Iowa R. App. P. 6.904(3)(o); *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

## II. Discussion.

### A. Error Preservation.

"Error preservation is a fundamental principle of law with roots that extend to the basic constitutional function of appellate courts." *State v. Harrington*, 893 N.W.2d 36, 42 (Iowa 2017). The doctrine is based on fairness; a trial court should not be faulted for failing to rule correctly on an issue it was never given the opportunity to consider. *See State v. Ambrose*, 861 N.W.2d 550, 555 (Iowa 2015). Moreover, "it is unfair to allow a party to choose to remain silent in the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable." *See id.* Thus, requiring error to be preserved both allows the trial "court to correct error without the necessity of an appeal" and "serves to create a record for appellate review." *Harrington*, 893 N.W.2d at 42. These rules "ensure that the opposing party and the district court are alerted to an issue at a time when corrective action can be taken or another alternative pursued." *Top of Iowa Co-op. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000). "[B]y avoiding proceedings that would have been rendered unnecessary had an earlier ruling on the issue been made," precious judicial resources are conserved. *Id.*

So to preserve an alleged error for appellate review, the "issue must be both raised and decided by the district court." *In re Det. of Anderson*, 895 N.W.2d 131,

138 (Iowa 2017). This includes issues that implicate constitutional rights. *See Taft v. Iowa Dist. Ct. ex rel. Linn Cty.*, 828 N.W.2d 309, 322 (Iowa 2013). If the "district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion [pursuant to Iowa Rule of Civil Procedure 1.904(2)] requesting a ruling in order to preserve error for appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002); *see also Taft*, 828 N.W.2d at 323. "[M]aking only general reference to a constitutional provision in the district court and then seeking to develop the argument on appeal" is not enough. *Taft*, 828 N.W.2d at 322-23.

In his appellate brief, Gilbert stated he preserved his appellate claims by "timely filing a Notice of Appeal." But the mere filing of a notice of appeal neither allows a trial court to correct an error nor produces any record of the error for review. We have stated time and time again, the filing of a notice of appeal does not preserve error for our review.[1] *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (Fall 2006) (explaining that "[a]s a general rule, the error preservation rules require a party to raise an issue in the trial court and obtain a ruling from the trial court"). We need not address unpreserved claims.

The physical care issue was preserved for our review because it was ruled on and decided by the district court, but Gilbert's constitutional claim was not preserved for lack of a 1.904(2) motion and we do not address it.

---

[1] We have restated this principle nearly fifty times since reiterating it in our published opinion of *State v. Lange*, 831 N.W.2d 844, 846-47 (Iowa Ct. App. 2013).

### B. Physical Care.

"Iowa Code chapter 600B [(2017)] confers subject matter jurisdiction upon the district court to decide cases of paternity, custody, visitation and support between unmarried parties." *Montgomery v. Wells*, 708 N.W.2d 704, 707 (Iowa Ct. App. 2005). Relevant here, "section 600B.40 grants the district court authority to determine matters of custody and visitation as it would under Iowa Code section 598.41"—section 600B.40's counterpart for divorcing or separating parents. *See id.*; *see also Braunschweig v. Fahrenkrog*, 773 N.W.2d 888, 891 n.3 (Iowa 2009).

"Physical care" is "the right and responsibility to maintain a home for the minor child and provide for routine care of the child." Iowa Code § 598.1(8). In determining whether to award joint physical care or physical care with one parent, the district court is guided by the factors enumerated in section 598.41(3), as well as other nonexclusive factors enumerated in *In re Marriage of Winter*, 233 N.W.2d 165, 166-67 (Iowa 1974), and *In re Marriage of Hansen*, 733 N.W.2d 683, 696-99 (Iowa 2007) (holding that although section 598.41(3) does not directly apply to physical care decisions, "the factors listed [in this code section] as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child"). Although we give consideration in any custody dispute to allowing the child to remain with a parent who has been the primary caretaker, *see Hansen*, 733 N.W.2d at 696, the fact that a parent was the primary caretaker of the child before separation does not assure an award of physical care, *see In re Marriage of Toedter*, 473 N.W.2d 233, 234 (Iowa Ct. App. 1991). The ultimate objective of a physical care determination is to place children in the environment most likely to bring them to healthy physical, mental, and social

maturity. *In re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999); *In re Marriage of Courtade*, 560 N.W.2d 36, 38 (Iowa Ct. App. 1996). As each family is unique, the decision is mainly based on the particular circumstances of each case. *See Hansen*, 733 N.W.2d at 699.

Here, the district court had the advantage of listening and observing each witness's demeanor firsthand. It is clear the district court's findings turned on its assessment of the credibility of the witnesses, or, more specifically, the court's determination that Paten was more credible than Gilbert. Upon our de novo review of the record, we defer to the district court's credibility findings and reach the same conclusion.

In considering the relevant factors, the district court found "the past primary care-giving is not as substantial a factor in this matter as it might be in other matters," explaining:

> The child has been in the physical care of each of the parties at different times in her short life, including through the shared care arrangement agreed to by the parties since the entry of temporary orders. For most such periods, however, the party with physical care has been residing with others and has been receiving substantial assistance from family members in providing primary physical care for the child.

Gilbert maintains the court penalized him for his mother's assistance in caring for the child. But the court found the factor less important overall, given the outside assistance and the changing of the physical care arrangements. The record supports the court's determination.

There was a dispute in the record about whether Gilbert withheld some parenting time from Paten, and the district court resolved the issue in favor of Paten. Gilbert complains that it was not his responsibility to facilitate a relationship

between Paten and the child when the child exclusively lived with him, and he essentially argues Paten should have done more. The court found Paten was a more credible witness on this point. Paten testified Gilbert unilaterally decided not to return the child to Paten's care several times. He did not first discuss it with her, then he required his permission for her to see the child, and even then, she could not see the child alone. The court determined Gilbert's actions did not encourage regular emotional support and contact by the child with Paten, and he did not provide a credible explanation for his decision to do so. The court's determinations are fully supported by the record.

Gilbert challenges some of the court's other findings adverse to him. One instance of import to the court was a dog bite the child acquired while in his care. The court found no fault for the bite on Gilbert's watch—sometimes dogs bite. But Gilbert's response to the bite troubled the court:

> Both Gilbert and his mother . . . testified as to what they did following the dog biting the child. Although their testimony was not perfectly consistent, they each testified that they spoke on the telephone with someone at the hospital in Maquoketa (roughly 3 miles from their home) who they understood to be a registered nurse; that they provided to the nurse information about the cause, nature and size of the injury; and that they were provided advice over the telephone by a person they understood to be a registered nurse. They both testified that the registered nurse advised them it would not be necessary (or even advisable) to bring the child to the hospital. [Gilbert's mother] testified that the nurse indicated that the child would likely require a stitch or two, based upon the information conveyed, but that such medical care was not advised. Gilbert testified that the nurse told them that stitches would do more harm than good to the child, in scarring and emotional upset. The court did not find such testimony by either Gilbert or his mother to be credible. The court does not find it to be credible that a licensed medical provider given information over the telephone about a young child bitten in the face by a dog would advise the person calling, over the phone and without ability to properly assess the wound, not to travel three miles to the hospital. The court found to be particularly

incredible Gilbert's testimony such person told them coming to the hospital for stiches would do more harm than good. Moreover, even if any such hospital employee made such statements, the court finds and concludes Gilbert should have exercised better judgment in providing care for the child.

The photographs of the child's wound . . . support the court's conclusions both that it would not be credible for a medical provider to provide such opinions over the telephone about the wounds and also that it was an exercise of poor judgment for Gilbert and/or his mother to fail to take the child to the hospital only three miles away. From the size and location of the wounds, it should have been clear to Gilbert that the wounds inflicted by the dog could have resulted in poor medical outcomes, including possible infection, scarring or perhaps even eye or nerve damage. From the photographs and from the testimony of Gilbert and his mother, it is clear that their attention to the wounds included only an attempt to clean them with a washcloth and to place two Band-Aids on the wounds. They apparently simply planned to allow the wounds to try to heal on their own.

Soon after the child was bitten by the dog, Gilbert appropriately notified Paten of the wounds prior to her coming to pick the child up as scheduled previously for the regular exchange of care. Paten testified she took the child home, examined the wounds and then took the child to the emergency room. At the emergency room treatment for the child included stitches . . . . By the next morning, the child's face had visible swelling. . . .

The court did not find Gilbert and his mother's account of calling the hospital to be credible. The court had a chance to hear the testimony and observe the witnesses, and we find no reason in the record to disturb the credibility findings.

In a case in which both parents are suitable caregivers, the physical care determination is a tough one to make. The district court gave thorough reasons for why it determined it is in the child's best interests to place the child in Paten's physical care. Considering all of the relevant factors and the court's credibility findings, we agree with its determination. So we affirm the court's order placing physical care of the child with Paten.

***C. Appellate Attorney Fees.***

Finally, both parties have requested an award of appellate attorney fees. On appeal, attorney fees are not a matter of right, but rest in this court's discretion. *See Spiker v. Spiker*, 708 N.W.2d 347, 360 (Iowa 2006). An award of appellate attorney fees depends on three factors: (1) the needs of the party making the request, (2) the ability of the other party to pay, and (3) whether the party making the request needed to defend the trial court's decision on appeal. *Id.*

Having affirmed the district court's order in all respects, we deny Gilbert's request for appellate attorney fees. Paten is entitled to appellate attorney fees for having to defend herself on this appeal. We remand to the district court to determine the amount of Paten's appellate attorney fee award.

***III. Conclusion.***

We affirm the district court's custody order in all respects and remand to the district court to determine the amount of Paten's appellate attorney fee award. Costs on appeal are assessed to Gilbert.

**AFFIRMED AND REMANDED.**