# IN THE COURT OF APPEALS OF IOWA

No. 19-0994
Filed April 29, 2020

**CHAD MICHAEL DIRKS,**
Plaintiff-Appellee,

**vs.**

**MANDA ECCLES,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Jeffrey L. Larson, Judge.

A mother appeals the district court's order denying her request for physical care of the parties' child, as well as a right of first refusal for additional time for visitation when the father is unavailable. **AFFIRMED.**

Chad Douglas Primmer, Council Bluffs, for appellant.

Amanda Heims, Council Bluffs, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

We filed our opinion in this case on April 15, 2020, but subsequently granted Chad Dirks's petition for rehearing. Our April 15, 2020 decision is therefore vacated and this decision replaces it.

Following a trial, the district court entered a custody and visitation order determining Chad Dirks and Manda Eccles should share physical care of their child. Manda appeals the order, contending the court erred in not placing the parties' child in her physical care. She also argues the court should have granted her the right of first refusal when Chad could not care for their child. Upon our de novo review, we affirm.

### I. Background Facts and Proceedings.

The facts of the case are essentially undisputed. Chad and Manda are the parents of B.D., born in August 2017, and have never been married. The child

> was born prematurely and . . . both parties were with [the child] in the hospital and Chad was present for the birth. Both parties reside in Council Bluffs, Iowa, with their parents at the time of trial. [Chad] works full time, currently overnights, and [Manda] provides daycare services to her children and her sister's children.

In September 2018, Chad petitioned to establish custody and visitation of the child. Chad requested he and Manda share legal custody and physical care, or that the child be placed in his physical care. Manda sought placement of the child in her physical care.

The parties participated in mediation before trial, and they were able to agree to some terms. But custody issues remained contested, and the matter went to trial. Both parties requested that the court include a right-of-first-refusal provision in the order so that they—instead of a third party—could care for their

child if the other parent was unavailable. The district court ordered joint legal care with shared physical care. The court declined to include of a right-of-first-refusal provision in its order.

Manda now appeals.

## II. Standard of Review.

Our review is de novo. *See* Iowa R. App. P. 6.907; *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005). Even so, we recognize that the district court could listen to and observe the parties and witnesses. *See In re Marriage of Zebecki*, 389 N.W.2d 396, 398 (Iowa 1986). Thus, we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. *See* Iowa R. App. P. 6.904(3)(g). Our overriding consideration is the best interests of the child. *See* Iowa R. App. P. 6.904(3)(o); *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

## III. Discussion.

Manda contends the district court erred in finding shared physical care was in the child's best interests. She also argues the court erred in denying her request for first refusal.

### A. Physical Care.

"Iowa Code chapter 600B confers subject matter jurisdiction upon the district court to decide cases of paternity, custody, visitation and support between unmarried parties." *Montgomery v. Wells*, 708 N.W.2d 704, 707 (Iowa Ct. App. 2005). Relevant here, "section 600B.40 grants the district court authority to determine matters of custody and visitation as it would under Iowa Code section

598.41"—section 600B.40's counterpart for divorcing or separating parents. *See id.*; *see also Braunschweig v. Fahrenkrog*, 773 N.W.2d 888, 891 n.3 (Iowa 2009).

"Physical care" is "the right and responsibility to maintain a home for the minor child and provide for routine care of the child." Iowa Code § 598.1(8) (2018). If shared physical care is awarded, "both parents have rights to and responsibilities toward the child including, but not limited to, shared parenting time with the child, maintaining homes for the child, [and] providing routine care for the child." *Id.* § 598.1(4). Even though the parties disagree on some matters, these problems should be able to be resolved to the benefit of the child. *See In re Marriage of Gensley*, 777 N.W.2d 705, 716 (Iowa Ct. App. 2009). "When joint physical care is not warranted, the court must choose one parent to be the primary caretaker, awarding the other parent visitation rights." *In re Marriage of Hynick*, 727 N.W.2d 575, 577 (Iowa 2007).

In determining whether to award shared physical care or physical care with one parent, the district court is guided by the factors enumerated in section 598.41(3), as well as other nonexclusive factors set out in *In re Marriage of Winter*, 233 N.W.2d 165, 166-67 (Iowa 1974), and *Hansen*, 733 N.W.2d at 696-99 (holding that although section 598.41(3) does not directly apply to physical care decisions, "the factors listed [in this code section] as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child"). *See also McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010). Although consideration is given in any custody dispute to allowing the child to remain with a parent who has been the primary caretaker, *see Hansen*, 733 N.W.2d at 696, the fact that a parent was the primary caretaker of the child before

separation does not assure an award of physical care, *see In re Marriage of Toedter*, 473 N.W.2d 233, 234 (Iowa Ct. App. 1991). Our law requires that a custody award will "assure the child maximum continuing physical and emotional contact with both parents." Iowa Code § 598.41(1)(a). But the ultimate objective of a physical care determination is to place the child in the environment most likely to bring her to healthy physical, mental, and social maturity. *See in re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999); *In re Marriage of Courtade*, 560 N.W.2d 36, 38 (Iowa Ct. App. 1996). The best-interest determination is not based "upon perceived fairness to the [parents]." *Hansen*, 733 N.W.2d at 695. Because each family is unique, the decision is mainly based on the particular circumstances of each case. *See id.* at 699.

Here, the district court had the advantage of listening and observing each witness's demeanor firsthand. While the court did not make any express credibility findings, the court did find Chad and Manda suitable parents to provide care for their child. Moreover, based on the court's order, the court found shared care is a workable solution here. Upon our de novo review, we agree with the district court's assessment.

Manda argues she can do a better job raising the child. She points out the child has been in her primary care since birth, and Chad's overnight work schedule makes his caregiving ability difficult. Manda notes the relationship between the parties was contentious enough that the district court found it should not include the parties' requested right-of-refusal provision. Chad even preferred to pay a third-party for daycare rather than let Manda have extra time with the child at no cost.

First, the parties' child was very young at the time of trial. Although Manda had been the child's primary caregiver for most of the child's life, the child's young age necessarily means Manda had only been the child's primary caregiver for a short amount of time. Under the circumstances of this case, the fact that Manda had been the child's primary caregiver is not dispositive.

Second, the "ability to communicate is one, but only one, of the factors to be considered in determining the propriety of a joint custody award." *In re Marriage of Short*, 373 N.W.2d 158, 160 (Iowa Ct. App. 1985). While the parents have had disagreements, tension at the end of a relationship is not unexpected. The record shows that both Chad and Manda have, at times, behaved immaturely and antagonized the other, but they could communicate by email on most occasions. Manda testified that after mediation, visitations had been, "[f]or the most part, pretty good." The parents "need not be in agreement at all times in order to justify joint custody; it is enough that they can communicate regarding [their child's] needs and support each other's relationship with [the child]." *Id.* The parties' mediation agreement provides that Chad and Manda will use email as the primary way to communicate with one another. Manda had Chad blocked from contacting her through her cell phone. Not an ideal situation, but still, Chad and Manda can work through their differences to carry out a care schedule that is in the best interests of their child.

Finally, given that Manda believed the visitations had been going pretty well, it is clear Chad's overnight work schedule was manageable. And because Chad and Manda live near each other, a shared physical-care arrangement will not be unduly burdensome and will allow the child to maintain the most stability and

continuity of care possible. *See Hansen*, 733 N.W.2d at 696. Focusing upon the needs of the child, a joint-physical-care arrangement will allow the child maximum time with each parent.

The road before Chad and Manda is long, and neither parent is perfect. Communication over their child's needs, even if only through email, is key. The parents do not have to like one another, but they must support each other's relationship with their child. When disagreements arise in the future, as they inevitably will, it is imperative the parents work together, putting the needs of their child first, and before their petty past squabbles. As always, the parties are free to cooperate with each other to modify the schedule as is appropriate and in the best interests of the child.

Upon our thorough review of the record, we find the trial court considered the appropriate statutory factors on physical care. We agree with the district court's determination that shared physical care is in the child's best interests. We therefore affirm the district court's physical care determination.

### B. Right of First Refusal.

At trial, Manda asked the district court to add a provision to the decree requiring Chad to offer her the opportunity to care for their child when Chad was unavailable to provide supervision before he used a third-party child care provider. Chad sought the same provision, but he requested that it "apply to situations that are non-work related." Such arrangements have been termed a "right of first refusal" in our case law. *See, e.g.*, *In re Marriage of Klemmensen*, No. 14-1292, 2015 WL 2089699, at *3 (Iowa Ct. App. May 6, 2015) (discussing right of first

refusal); *In re Burleson*, No. 11-1391, 2012 WL 2123317, at *3 (Iowa Ct. App. June 13, 2012).

Generally "a non-custodial parent should be given right of first refusal to have visitation, over others (e.g., babysitter) since it is in the child's best interest to have the other parent care for the child on a visitation basis, rather than another person selected by the custodial parent." Marlin Volz, Jr., 2 Iowa Prac., *Methods of Practice* § 31:27 (2020). While in many cases the right of first refusal benefits the child and is preferred by the parents, at times it can be a source of confusion, stress, and provocation. *See, e.g.*, *Day v. Anderson*, No. 17-1808, 2018 WL 3302363, at *4-*5 (Iowa Ct. App. July 5, 2018) (affirming decree modification removing provision because it was "a source of confusion and stress"); *In re Marriage of Tech*, No. 13-0862, 2013 WL 6712580, at *6 (Iowa Ct. App. Dec. 18, 2013) (affirming decree modification eliminating this provision because it caused the children stress); *Burleson*, 2012 WL 2123317, at *3 (modifying custody order to remove father's right of first refusal to care for the child if the mother was working and he was not because of the "extreme animosity" between the parents, the court's determination joint physical care was not workable, and impracticality because of the age of the child). Here, the district court found "due to communication issues between the parties, the Court finds that said right should not be included in the final order."

Upon our de novo review, we find that although shared physical care is possible despite less than ideal communication between the parties, and is in the child's best interests, adding a right-of-first-refusal provision is not. The parents have shown they can work together under a set schedule. Adding uncertainty

would only complicate matters and create stress and animosity between the parties. Given the parents' history, the parents and the child will benefit from a structured custodial schedule. We therefore affirm the district court's declination to include a right-of-first-refusal provision in its order.

### C. *Appellate Attorney Fees.*

Finally, both parties request an award of appellate attorney fees. "In a proceeding to determine custody or visitation, . . . the court may award the prevailing party reasonable attorney fees." Iowa Code § 600B.26. This includes appellate attorney fees. *See Schaffer v. Frank Moyer Constr. Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (holding statute allowing award of trial attorney fees permits award of appellate attorney fees as well). Manda is not a prevailing party and therefore not entitled to appellate attorney fees.

"An award of appellate attorney fees is within the discretion of the appellate court." *In re Fiscus*, 819 N.W.2d 420, 425 (Iowa Ct. App. 2012) (quoting *Markey*, 705 N.W.2d at 26). In determining whether to award attorney fees, we consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *Id.* (citation omitted). Although we acknowledge Chad was required to defend the district court's decision on appeal, and that he prevailed, and that his request for fees is modest, after considering the relevant factors, we find his need and Manda's ability to pay weigh against an award of appellate attorney fees to Chad. So we decline to award Chad appellate attorney fees.

*IV. Conclusion.*

Upon our de novo review of the record, we agree with the district court's determination that shared physical care of the parties' child was in the child's best interests.  Similarly, we concur with the district court's declination to include a right-of-first-refusal provision in its order, based on the unique facts of the case.  We decline the parties' requests for appellate attorney fees.  Any costs on appeal are assessed equally to the parties.

**AFFIRMED.**