# IN THE COURT OF APPEALS OF IOWA

No. 20-0659
Filed January 21, 2021

**TANNER DAVID THOMAS,**
Petitioner-Appellant,

**vs.**

**KENNEDY NICOLE STOTTS,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Lee (North) County, John M. Wright,

Judge.

A father appeals the district court's ruling awarding physical care of the

parties' child to the mother. **AFFIRMED.**

Curtis Dial of Law Office of Curtis Dial, Keokuk, for appellant.

Marlis J. Robberts of Robberts & Kirkman, L.L.L.P., Burlington, for appellee.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**DOYLE, Presiding Judge.**

After trial on a petition to establish paternity, custody, visitation, and support, the district court awarded physical care of the parties' minor child to the mother. The father appeals. He argues he is the better, more stable parent.

### I. Facts and Proceedings.

Tanner Thomas and Kennedy Stotts are the parents of B.C.S., born in 2016. Thomas was twenty years old when he met sixteen-year-old high-school-student Stotts. Not too long after the pair started dating, Stotts became pregnant. Stotts informed Thomas about her pregnancy and the next day Thomas left town and moved to the Kansas City area. Stotts had very little to no contact with Thomas during her pregnancy. After a paternity test confirmed Thomas as the father, Stotts began making the four-and-a-half hour drive to Kansas City to allow weekend visits between B.C.S. and Thomas. Within a short time, the parties started a visitation schedule where each party would have B.C.S. for alternating two-week periods. The parties would meet halfway to make the exchange. This schedule allowed each parent more consecutive time with the child and reduced driving time for each. The arrangement worked well.

Thomas has worked for BNSF Railway as a locomotive engineer and train conductor for over two years. He lives with his fiancé in Shawnee, Kansas. Thomas has no specific work schedule, but works eight to twelve hours per day and can be out of town for overnight work. Thomas is also in the National Guard with an annual three-week summer commitment. Thomas has child care for B.C.S. arranged when he is unavailable.

Stotts lives in Fort Madison with her three children and her mother. Stotts had her GED and at the time of trial was enrolled in classes at a community college working to get a medical assistant diploma. Stotts's mother runs an in-home daycare and watches Stott's three children when needed. The three children get along well, play together all the time, and enjoy each other's company.

In June 2018, Thomas petitioned to establish custody, visitation, and support and prayed for temporary and permanent physical custody of B.C.S. After a default decree was set aside, the matter went to trial in February 2020. The district court entered its findings of fact, conclusions of law, and order in March 2020. Among other things, the court awarded physical care of B.C.S. to Stotts. Thomas now appeals, seeking physical care of the child.

## II. Standard of Review

The court tries custody matters in equity, so we review the proceedings de novo. Iowa R. App. 6.907; *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). We give weight to the district court's fact findings, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). We will disturb the district court's ruling "only when there has been a failure to do equity." *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

## III. Analysis

We begin by noting the district court's apt observation,

> This is one of those unusual custody cases wherein both parents show all the positive qualities for which the Court seeks. Each has a loving relationship with their child, each has a suitable home, and the parents communicate effectively. A set of facts as presented herein would normally lead to joint physical care without hesitation. Unfortunately, the physical distance between the parents prevents this.

On appeal, Thomas argues he has shown a greater level of maturity and stability and should be awarded physical care of B.C.S. Physical care is the right and responsibility to maintain a home for the minor child and provide for routine care of the child. *See* Iowa Code § 598.1(8) (2018). "Iowa Code chapter 600B confers subject matter jurisdiction upon the district court to decide cases of paternity, custody, visitation and support between unmarried parties." *Montgomery v. Wells*, 708 N.W.2d 704, 707 (Iowa Ct. App. 2005). Relevant here, "section 600B.40 grants the district court authority to determine matters of custody and visitation as it would under Iowa Code section 598.41"—section 600B.40's counterpart for divorcing or separating parents. *See id.*; *see also Braunschweig v. Fahrenkrog*, 773 N.W.2d 888, 891 n.3 (Iowa 2009); *Hensch*, 902 N.W.2d at 825.

When awarding physical care, our primary concern is the best interests of B.C.S. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007). The ultimate objective of a physical care determination is to place a child in the environment most likely to bring the child to healthy physical, mental, and social maturity. *In re Marriage of Courtade*, 560 N.W.2d 36, 38 (Iowa Ct. App. 1996).

When determining physical care, we are guided by the factors enumerated in Iowa Code section 598.41(3)[1] as well as other nonexclusive factors set out in *In*

---

[1] *See In re Marriage of Hansen*, 733 N.W.2d 683, 696-99 (Iowa 2007) (holding that although section 598.41(3) does not directly apply to physical care decisions, "the factors listed [in this code section] as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child."). Relevant statutory factors are:
> (a) Whether each parent would be a suitable custodian for the child[ren].

*re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).[2]  As each family is

unique, the decision primarily turns on the particular circumstances of each case.

*Hansen*, 733 N.W.2d at 699.

---

(b) Whether the psychological and emotional needs and development of the child[ren] will suffer due to lack of active contact with and attention from both parents.

(c) Whether the parents can communicate with each other regarding the child[ren]'s needs.

(d) Whether both parents have actively cared for the child[ren] before and since the separation.

(e) Whether each parent can support the other parent's relationship with the child[ren].

(f) Whether the custody arrangement is in accord with the child[ren]'s wishes or whether the child[ren] ha[ve] strong opposition, taking into consideration the child[ren]'s age and maturity.

(g) Whether one or both of the parents agree or are opposed to joint custody.

(h) The geographic proximity of the parents.

Iowa Code § 598.41(3).

[2] The *Winter* factors include:

(1) The characteristics of [the] child[ren], including age, maturity, mental and physical health.

(2) The emotional, social, moral, material, and education needs of the child[ren].

(3) The characteristics of each parent, including age, character, stability, mental and physical health.

(4) The capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child[ren].

(5) The interpersonal relationship between the child[ren] and each parent.

(6) The interpersonal relationship between the child[ren] and [their] siblings.

(7) The effect on the child[ren] of continuing or disrupting an existing custodial status.

(8) The nature of each proposed environment, including its stability and wholesomeness.

. . . .

(12) Any other relevant matter the evidence in a particular case may disclose.

223 N.W.2d at 166-67.

In its ruling awarding Stotts physical care of B.C.S., the district court evaluated relevant factors and stated:

> The court considers several factors when determining which parent will better provide the healthy environment for the child. For example, the court strives to provide maximum contact between the child and both parents. The parent awarded physical care of the child must encourage the relationship between the child and the other parent. This includes liberal parenting time for the other parent. The Court also considers the relationship between B.C.S. and her siblings. There is a bond between the children that is important to maintain.
>
> As earlier indicated, the parties are equally capable of caring for B.C.S. If they lived in the same geographic location, then joint physical care would be appropriate. However, this is not possible. Ms. Stotts has always been located in Fort Madison. Mr. Thomas moved to Kansas City. While the parenting plan now in place has been beneficial to the child, this cannot continue once she is in school. Therefore, the Court will place B.C.S. in Ms. Stotts' care.

When joint physical care is not warranted, the court must choose one parent to be the primary caretaker, awarding the other parent visitation rights. *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). When evaluating what is best for the child, siblings' relationships are considered. *See In re Marriage of Smiley*, 518 N.W.2d 376, 380 (Iowa 1994) (considering the presumption that siblings should not be separated). Siblings, whether full or half-siblings, should be separated only for compelling reasons. *In re Marriage of Quirk–Edwards*, 509 N.W.2d 476, 480 (Iowa 1993); *Willenbring v. Roepcke*, No. 05-1261, 2006 WL 624578, at *3 (Iowa Ct. App. Mar. 15, 2006). Iowa courts prefer not to separate siblings, including half-siblings. *In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986); *In re Marriage of Dimartino*, No. 13-0727, 2014 WL 5861816, at *7 (Iowa Ct. App. Nov. 13, 2014). The presumption that siblings should reside together may

be overcome only if their separation "may better promote the long-range interests of children." *Orte*, 389 N.W.2d at 374 (citation omitted).

Stotts testified that B.C.S. and her siblings enjoy a very close relationship and play with each other all the time. B.C.S is about a year older than her sister B.H. Stotts testified that the siblings are almost inseparable and like to play with each other "all the time." The two close-aged siblings enjoy playing Barbies, holding hands, and attending events like the "Sweet Corn Festival" or "Ballocity in Fun City in Burlington."

Both parents are equally able to care for B.C.S. But for the geographical distance between them, shared physical care would be appropriate. With shared care not possible, particularly after B.C.S. starts school, the court must pick one parent to have physical custody of the child. With other relevant factors being equal, the tipping factor is our reluctance to separate B.C.S. from her siblings with whom she has closely bonded.

We therefore affirm the district court's order.

**AFFIRMED.**